UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

WENDY DOBBINS, individually and on behalf of persons similarly situated,

    Plaintiff/Counterclaim Defendant,

v.

SCRIPTFLEET, INC., a Florida corporation, f/k/a Network Express, and XYZ Entities 1-10 (fictitious names of unknown liable entities),

    Defendant/Counterclaim Plaintiff.

Case No.: 8:11-cv-01923-SCB-AEP

DISPOSITIVE MOTION

**SCRIPTFLEET, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

Defendant/Counterclaim Plaintiff, Scriptfleet, Inc. ("Scriptfleet"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6) hereby responds to the Motion to Dismiss Counterclaim (the "Motion to Dismiss") filed by Plaintiff/Counterclaim Defendant, Wendy Dobbins ("Dobbins").

**I.**

**INTRODUCTION AND BACKGROUND FACTS[1]**

Dobbins is an independent contractor who provided delivery equipment and services to Scriptfleet under a written Independent Contractor Agreement (the "Agreement"). *Counterclaim*, ¶ 2 (ECF No. 35). Under the Agreement, all parties understood that Dobbins was an independent contractor who provided and maintained her own equipment for delivery services. *Agreement*, ¶ 15 (ECF No. 36).

---

[1] The facts in this brief are taken from Scriptfleet's counterclaim, and they must, for purposes of Dobbins' Motion to Dismiss, be taken as true. *Anthony Sterling, M.D. v. Provident Life and Accident Ins. Co.*, 519 F.Supp.2d 1195, 1208 (M.D. Fla. 2007).

On August 24, 2011, Dobbins filed a Complaint alleging she should be reclassified from an independent contractor to an employee of Scriptfleet. Dobbins alleged that once she achieves reclassification as an employee, she is entitled to overtime pay under the Fair Labor Standards Act ("FLSA"). On October 11, 2011, Dobbins, on behalf of herself and others, filed the Amended Complaint (ECF No. 10) adding a claim that her independent contractor classification violated the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"). On February 23, 2012, upon motion by Scriptfleet, the Court dismissed Dobbins' FDUTPA claim, leaving only the original overtime claim.

Scriptfleet answered the Amended Complaint, denying Dobbins' claims and asserting Dobbins and other delivery drivers were properly classified as independent contractors. Scriptfleet also filed the Counterclaim asserting that, to the extent Dobbins had been properly classified as an independent contractor, she breached her written Agreement. Dobbins' fully-executed Agreement was attached as an exhibit to Scriptfleet's Answer, Affirmative Defenses and Counterclaim. The Agreement provides that Dobbins agrees to:

> defend, indemnify and hold harmless CARRIER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property which CARRIER may incur arising out of or in connection with the operation of the Equipment, CONTRACTOR'S obligations under this Agreement, or any breach by CONTRACTOR of the terms of this Agreement. This provision shall remain in full force and effect both during and after the termination of this Agreement.

*Agreement*, ¶ 13. Scriptfleet asserted in its Counterclaim that, based on the indemnification language in the Agreement, Scriptfleet is entitled to indemnification from Dobbins for the defense of Dobbins' quest to be paid additional compensation. *Counterclaim*, ¶¶ 10-12.

The Agreement contains language that unambiguously shows the intent of the parties in entering into the terms and conditions of this Agreement was that Dobbins, as a delivery driver,

would operate as an independent contractor. *Agreement*, ¶ 15. The most significant language illustrating the intent of the parties is identified below:

- The Agreement is titled "Independent Contractor Agreement."

- The Independent Contractor (Dobbins) must provide all equipment (including the vehicle) and maintain it. *Agreement*, ¶ 9(a) & (b).

- Specifically, the Independent Contractor must furnish all necessary oil, fuel, tires and other parts, supplies and equipment necessary for the safe operation of the vehicle. *Id.*, ¶ 9(a).

- The Independent Contractor must provide all repairs for the operation of the vehicle. *Id.*

- The Independent Contractor is responsible for all fines incurred from operation of the vehicle when the fine results at least partially from the acts or omissions of the Independent Contractor. *Id.*, ¶ 9(c).

- The Independent Contractor is fully and solely responsible for selection, training, hiring, disciplining, wages and salaries, and provision of benefits (among other responsibilities) for any drivers or laborers they choose to utilize in the operation of a vehicle. *Id.*, ¶ 15.

- The Independent Contractor must maintain its or her own insurance policies for automobile liability, worker's compensation/occupational accident insurance, passenger insurance, or any other form of insurance needed for operation of their vehicle. *Id.*, *Appendix B*.

Pursuant to the Agreement, Scriptfleet filed its compulsory Counterclaim citing its right to indemnification. Specifically, Dobbins agreed to indemnify Scriptfleet for any "action" against Scriptfleet "arising out of or in connection with" Dobbins' "obligations under this Agreement." *Agreement*, ¶ 13. One of Dobbins' obligations under the Agreement was to work

for a liquidated fee amount. *Id.*, ¶ 3. Specifically, the Agreement holds that "[i]t is expressly understood and agreed that CONTRACTOR'S compensation shall be as set forth in *Appendix A*, and such compensation shall constitute the total compensation for everything furnished, provided, or done by CONTRACTOR in connection with this Agreement, including driver's services." *Id.*

Dobbins has alleged in her Complaint, via claims for overtime pay, that she is owed more than the liquidated fee amount in the Agreement, providing Scriptfleet with a reasonable basis for alleging that Dobbins' lawsuit is an "action" against it "arising out of or in connection with" Dobbins' "obligations under the Agreement." *Id.*, ¶ 10. Thus far, Scriptfleet has incurred, and will continue to incur, attorney fees and expenses in defending against Dobbins' claims.

## II.

## ARGUMENT

Directly analogous case law involving an essentially identical set of facts shows that Scriptfleet's Counterclaim is viable. *Spellman v. American Eagle Express, Inc.*, 680 F.Supp.2d 188 (D.D.C. 2010). Dobbins nevertheless seeks to dismiss Scriptfleet's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and argues that the Counterclaim is unlawful. Dobbins, however, ignores well-settled law that requires her to take the facts asserted by Scriptfleet in its Counterclaim (showing that Dobbins is an independent contractor) as true. Dobbins instead improperly asks the Court to take her assertions (that she is an employee and therefore subject to the FLSA) as true. Dobbins then relies on case law applicable only to employment relationships. Taking Scriptfleet's assertions as true, Scriptfleet simply seeks to hold Dobbins, an independent contractor, to the Agreement she signed. Scriptfleet's Counterclaim for indemnification is therefore viable and should stand.

A.

**Motion to Dismiss Standard**

In considering Dobbins' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the facts and allegations set forth in the pleadings and must accept as true all of the factual allegations made by Scriptfleet. *Erickson v. Pardus*, 551 U.S. 89 (2007). Specific facts are not necessary; the claimant need only give Plaintiff fair notice of what the claim is and the grounds upon which it rests. *Anthony Sterling, M.D. v. Provident Life and Accident Insurance Co.*, 519 F.Supp.2d 1195, 1208 (M.D. Fla. 2007).

The U.S. Supreme Court has held that to survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level when it is assumed that all allegations in the complaint are true even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Further, "a well-pleaded Complaint may proceed even if it strikes a savvy Judge that actual proof of those facts is improbable." *Id.*

Here, Scriptfleet's pleadings, including the Agreement attached to the pleadings, show that Dobbins was an independent contractor who contractually agreed to indemnify Scriptfleet for any expense incurred by Scriptfleet at the hands of Dobbins. Taking Scriptfleet's allegations as true, there is no FLSA violation and Scriptfleet is fully entitled to enforce the contractual indemnity provision to which Dobbins agreed. As such, the Counterclaim cannot be dismissed.

B.

**Scriptfleet's Indemnification Counterclaim is a Viable Action
and Should Therefore Remain**

Dobbins argues that Scriptfleet's Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because employers cannot seek indemnification under the FLSA for their FLSA

violations. Scriptfleet, however, is not seeking indemnification for FLSA violations but is instead asserting a Counterclaim *only* to the extent Dobbins fails to prove she should be reclassified. As an independent contractor, the FLSA does not apply, and Scriptfleet's Counterclaim is viable. Therefore, the Counterclaim should stand and Dobbins' Motion to Dismiss should be denied.

### 1.

### The Counterclaim Is Viable Because Dobbins Is Not An Employee

Dobbins argues that Scriptfleet may not assert a claim for contractual indemnification because employers may not shift their liability for FLSA violations. *Motion to Dismiss* at 3-5. This argument entirely misunderstands Scriptfleet's position in this case, and ignores the fact that Dobbins bears the burden of proving the existence of an employment relationship between her and Scriptfleet before the FLSA even applies. *See Doe v. Cin-Lan, Inc.*, No. 08-CV-12719, 2008 U.S. Dist. LEXIS 107802, at *16 ( E.D. Mich. Nov. 20, 2008) (court notes that, in order for the plaintiff to prove her FLSA retaliation claim, she must show that: "(1) defendants took actions constituting discrimination after [the plaintiff] filed her lawsuit; and (2) *she is an employee*." *Id.* at *16 (emphasis added).

Scriptfleet is not Dobbins' employer under the FLSA and therefore is not subject to that statute's requirements. Similarly, Dobbins is not an employee under the FLSA and therefore is not able to recover anything under the statute. *See Baker v. Dataphase, Inc.*, 781 F. Supp. 724, 735 (D. Utah 1992) (dismissing FLSA overtime claim after finding worker to be an independent contractor under "economic realities" test). These facts, pled in Scriptfleet's Counterclaim and shown through the Agreement, must be taken as true. *See Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008); *Guantanamera Cigar Co. v. Corporacion*

6

*Habanos, SA*, 672 F.Supp.2d 106, 108 (D.D.C. 2009). Taking these facts as true, it becomes clear that Scriptfleet's Counterclaim is proper.

The 2010 *Spellman* decision provides the most analogous example in this regard. In *Spellman,* a group of independent contractor delivery drivers sought to be reclassified as employees and paid overtime under federal and state overtime provisions. The drivers, however, signed independent contractor agreements containing indemnification provisions requiring indemnification for any "action" against the defendant "arising out of or in connection with" the plaintiffs' "obligations under this Agreement." 680 F.Supp.2d at 191.

The plaintiffs moved to dismiss the counterclaim, arguing, like Dobbins argues in this case, that employees cannot be forced to indemnify their employer for overtime violations. The court rejected the plaintiffs' argument and denied the motion to dismiss, recognizing "the crux" of the lawsuit was overtime – i.e., the ability to receive additional money under the written agreements. *Id.* The court then held that the defendant therefore had a reasonable basis for alleging the lawsuit was an action arising out of the plaintiffs' obligations under the written agreements and the claim for indemnification must survive. *Id.* A substantially identical situation exists in the present case, and the same result should follow.

Many other federal courts, including this very District, have also supported an employer's right to bring a counterclaim pursuant to the FLSA. Under the FLSA analysis, courts have specifically enforced these provisions when the employer has been sued pursuant to the FLSA and the counterclaim is compulsory and not baseless. *Kentisch v. Madahcom*, 566 F.Supp.2d 1343 (M.D. Fla. 2008) (allowing a breach of contract counterclaim to stand and denying the plaintiff's request to add a claim that the counterclaim was retaliatory under the FLSA); *Ergo v. International Merchants Services,* 519 F.Supp.2d 765 (N.D. Ill. 2007). Courts have in fact

upheld claims for indemnification for analogous FLSA claims where indemnification arose from a contract between the parties. *Chao v. AKI Indus., Inc.,* 2007 WL 1839652 (D. Utah); *Daniels v. Bd. of Trustees of Herington Mun. Hosp.,* 841 F.Supp. 363 (D. Kan. 1993).[2]

The cases cited by Dobbins, at best, fail to support Dobbins' position, and at worst, are misleading. In each of those cases, there was no question that the plaintiff was an employee and the defendant's liability for violating the FLSA was already established. *See Herman v. RSR Sec. Services*, 172 F.3d 132, 144 (2d Cir. 1999) ("[T]here is no right to contribution or indemnification for *employers* held *liable* under the FLSA."); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. N.C. 1992) ("Food Lion sought to indemnify itself against Tew *for its own violation of the FLSA*, which the district court found, and we agree, is something the FLSA simply will not allow."); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) ("No cause of action for indemnity by an employer against its employees *who violate the Act* appears in the statute."); *Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311, 328 (S.D.N.Y. 2001) (after holding that the defendant was liable for violating the FLSA, the court observes "there is no right to contribution or indemnification for employers *held liable under the FLSA . . . .*") (quoting *Herman*)

As an example of the serious over-reaching, one case relied on by Dobbins squarely contradicts her position. In *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405 (10th Cir. 1992), the Secretary of Labor brought suit against Gingerbread House, Inc. and its owners under the FLSA alleging unlawful retaliation against employees of Gingerbread House. *Id.* at 1406. The

---

[2] Because Dobbins filed a lawsuit alleging that she was misclassified as an independent contractor rather than employee, Scriptfleet's counterclaim based on the Independent Contractor Agreement was a compulsory counterclaim required to be filed at the time of its responsive pleading for Scriptfleet to avoid the possibility of waiving the counterclaim. Fed.R.Civ.P. 13(a); *Torres v. Gristede's Operating Corp.,* 2008 WL 4054417 (S.D. N.Y. 2008 ). Scriptfleet simply protected its right to bring a cause of action based on the indemnification provisions of the Agreements when the Court ultimately finds that the Agreements are enforceable and that Dobbins was an independent contractor.

Secretary argued that the defendants unlawfully filed a third-party complaint seeking indemnity from four employees, and that defendants discharged one of the employees in retaliation for the cooperation she gave to the Department of Labor. *Id.* The district court found neither action to be unlawful retaliation. *Id.*

On appeal, the Secretary argued that "third-party complaints for indemnity in FLSA cases are baseless because they are preempted by the Supremacy Clause." *Id.* at 1407. The Tenth Circuit refused to side with the Secretary and instead held that the district court was correct in permitting the defendant to litigate the indemnity claim because it was not baseless:

> We hold that the filing of the third party complaint for indemnity was not baseless as a matter of fact or law. . . . We affirm the district court's conclusion that the filing of the third party complaint was not unlawful retaliation under the FLSA.

*Id.* at 1408. Thus, under *Gingerbread House*, a claim for indemnity asserted by a defendant in an FLSA case against its own employees is permissible so long as it is neither "baseless as a matter of fact or law." Scriptfleet's Counterclaim is therefore proper. *See Spellman*, 680 F.Supp.2d at 191. At least the Court must assume the truth of the allegations in that regard set forth in Scriptfleet's Counterclaim.

Further, Dobbins' argument that the indemnity provision improperly shifts fees is misplaced. *Motion to Dismiss* at 7 (*citing Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338 (D. Col. July 15, 2011)).[3] Such an argument was addressed head-on and rejected by *Spellman*, which held that the counterclaim was not "preempted by, or contrary to the policy of, the FLSA." 680 F.Supp.2d at 191. Whatever the merits of Dobbins' argument should the FLSA apply, the facts laid out in Scriptfleet's Counterclaim show that the FLSA does not apply due to the independent contractor status of Dobbins. The Court must assume that Dobbins is *not* an

---

[3] *Daugherty* is inapposite here because that case involved the enforceability of an arbitration agreement and an attorney fee provision for a "prevailing party."

employee and does *not* have valid FLSA claims. Consequently, Congress's decision to award prevailing plaintiffs legal fees under the FLSA has no bearing whatsoever on Scriptfleet's legal fees in this case. That question is a matter of the Agreement Dobbins entered into with Scriptfleet, and it plainly entitles Scriptfleet to indemnification from Dobbins for such costs.

## 2.

### The FLSA Does Not Apply To Independent Contractors

Contrary to Dobbins' suggestions, federal courts construing the FLSA, including the Supreme Court, have routinely acknowledged that Congress intended its protections to extend only to employees, not independent contractors. *See Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944) ("Congress intended . . . to achieve a uniform national policy of guaranteeing compensation for all work or employment *engaged in by employees* covered by the [FLSA].") (emphasis added); *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 801 (D.C. Cir. 1983) ("The [FLSA] established minimum hourly wages for *employees*, limited the number of hours *employees* could work without receiving overtime compensation, and prohibited oppressive child labor.") (emphasis added); *Marshall v. Hamburg Shirt Corp.*, 577 F.2d 444, 446 (8th Cir. 1978) ("A fundamental purpose of the [FLSA] was to encourage employers to distribute work among a larger number of *employees* rather than to work *employees* overtime.") (emphasis added).

Lacking on-point authority, Dobbins nevertheless argues that *Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311 (S.D.N.Y. 2001), supports her position. In *Gustafson*, the plaintiff asserted claims arising under the FLSA and other statutes. The Southern District of New York first held "that plaintiff was an employee of the Company for FLSA purposes." *Id.* at 326. With respect to the defendant's contractual indemnification claim against a third party for the

10

company's own violation, the Court subsequently held that the defendant "has no right to indemnification for damages assessed under the FLSA." *Id.* at 328 (citing *Herman*, 172 F.3d at 144).[4] Thus, *Gustafson* stands for the unremarkable proposition that an employer found liable under the FLSA may not seek indemnity from its employee; it does not support a broad public policy abolishing all indemnity provisions in independent contractor agreements. That the Court did not resolve the indemnity issue until after finding the plaintiff to be an employee actually supports Scriptfleet's position that it would be premature, at this early stage of litigation, to dismiss the indemnity Counterclaim before a determination of Dobbins' employment status is made.

Similarly inapposite is *Villareal v. El Chile, Inc.*, 601 F.Supp.2d 1011 (N.D. Ill. 2009), another case relied on by Dobbins. In *Villareal*, the plaintiffs asserted a class action for allegedly unpaid overtime and minimum wages under the FLSA. *Id.* at 1013. It was undisputed that the plaintiffs were employees. *Id.* The defendants asserted a counterclaim for *implied* indemnity under Illinois common law; it appears that there were no contracts between the plaintiffs and the defendants. The Northern District of Illinois dismissed the defendant's counterclaim for implied indemnity, noting the general rule that an employer may not seek indemnity from its employees. *Id.* at 1015-16 (citing *Herman*, *Lyle*, and *Lecompte*). *Villareal* is thus distinguishable on two grounds. First, the plaintiffs were admittedly employees protected by the FLSA, and, second, they sought implied indemnity under the common law of Illinois, not contractual indemnity under a contract into which they voluntarily entered. Moreover, even if an employee is exempt

---

[4] Dobbins improperly highlights, in boldface and by underline, the *Gustafson* court's indication that the status of the party from whom indemnification is sought is irrelevant. *Motion to Dismiss* at 4. Dobbins infers that the statement prohibits indemnification regardless of whether Dobbins is an employee or an independent contractor. The *Gustafson* court found no such thing. Rather, the court simply held that an employer who had been found to have violated the FLSA could not seek indemnification for the employer's violation from a third party, regardless of whether the third party was a co-employer of the employee. 171 F.Supp.2d at 328.

from the minimum wage and overtime provisions of the FLSA, she is still protected from retaliation under 29 U.S.C § 215(a)(3), and therefore entitled to protections under the FLSA that independent contractors are not. *See Dellinger v. Science Applic. Int'l Corp.*, 649 F.3d 226 (4th Cir. 2011). *Villareal* simply does not support a broad public policy abolishing all indemnity provisions in independent contractor agreements.

### 3.

### Public Policy Supports enforcing the Terms of a Written Business Agreement Between Consenting Parties

Alternatively, Dobbins argues that giving effect to the indemnity provisions would discourage independent contractors from bringing claims under the FLSA because they might face liability for the defendant's legal fees and costs if their claims are unsuccessful. *Motion to Dismiss* at 6-7. As a preliminary matter, Dobbins is an independent businesswoman who entered into a commercial arrangement with Scriptfleet governed by the Agreement she signed. Courts routinely enforce indemnity agreements between businesses in commercial contexts, holding such businesspeople to the terms to which they previously assented and upon which the parties' entire business, operational and financial relationship exists. Enforcing such agreements represents the essence of public policy, not a derogation of it.

The parties in this case specifically bargained pursuant to an independent contractor relationship (*Agreement*, ¶ 15), set forth equipment to be provided at the independent contractor's expense (*id.*, ¶ 9), related services to be provided by the independent contractor (*id.*, ¶¶ 1, 9), detailed the compensation and other payment to be provided by Scriptfleet (*id.*, ¶ 3), laid out the responsibilities for service failures and cargo claims (*id.*, ¶¶ 6, 9-12), and expressly agreed that the independent contractor controlled the means and methods of performance (*id.*, ¶ 15).

Scriptfleet consistently relies on the written bargain struck by the independent contractors for federal regulatory and tax reporting purposes. In short, Scriptfleet's entire relationship with its contractors is built on the independent contractor nature of the relationship. Wiping away the contractual remedy to which the parties agreed for an unsuccessful challenge to the independent contractor relationship unjustly punishes Scriptfleet.

Quite simply, Dobbins ignores the overt disparity in placing Scriptfleet in a position to rely on the Agreement and then, without even pleading for the rescission of the Agreement, requests that it be ignored. Nor has Dobbins shown that the Agreement is unconscionable, an issue on which she would bear the burden of proof. *See Armstrong v. Accrediting Council for Continuing Educ. & Training*, 832 F.Supp. 419, 432 (D.D.C. 1993) ("To establish unconscionability, *plaintiff must prove* not only that one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party.") (emphasis added). In other words, Dobbins ignores the harm to businesses like Scriptfleet and instead claims she should get both the benefit of the Agreement *and* the benefit of employment status (something expressly disclaimed in the Agreement). In other words, Dobbins impermissibly seeks to use the FLSA as a sword instead of a shield. *See Wirtz v. Harrigill*, 214 F. Supp. 813, 815 (S.D. Miss. 1963) ("This [FLSA] is designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer . . . .").

Under the policy Dobbins proposes, a business like Scriptfleet would be estopped from asserting a counterclaim seeking to enforce the terms of an independent contractor agreement for fear of a retaliation claim under the FLSA. In this alternate reality, independent contractors would have no disincentive to pursue baseless misclassification claims. Businesses and courts, however, do stand to lose. Businesses would be forced to litigate employment status at summary

judgment, if not trial, with no prospect of recovering fees under the contract if successful. Courts would see their dockets fill with such cases with no obvious settlement mechanisms available to encourage prompt resolutions. Thus, to the extent a ruling against Dobbins discourages independent contractors from suing for employee-type benefits, this is a desirable outcome. See *Wirtz*, 214 F. Supp. at 815.

### C.

### Dobbins' Claims Fall Within the Scope of the Indemnification Clause

Dobbins executed the Agreement, including an agreement to indemnify Scriptfleet for any "action" against Scriptfleet "arising out of or in connection with" Dobbins' "obligations under this Agreement." *Counterclaim*, ¶ 8. One such "obligation" was the agreement to work for a liquidated fee amount. See *Agreement*, ¶ 3 ("It is expressly understood and agreed that CONTRACTOR's compensation shall be as set forth in *Appendix A* and such compensation shall constitute the total compensation for everything furnished, provided, or done by CONTRACTOR in connection with this Agreement, including driver's services."). Dobbins has alleged that Scriptfleet owes Dobbins and other independent contractors additional amounts for overtime on the basis of misclassification. See *Amended Complaint*. Essentially, Dobbins argues that she is owed more than the liquidated fee amount in the Agreement. Therefore, Scriptfleet has a reasonable basis for alleging that this lawsuit is an "action" against it "arising out of or in connection with" Dobbins' "obligations under this Agreement." *Counterclaim*, ¶ 8.

The Court in *Spellman* upheld an essentially identical provision under essentially identical circumstances, holding that the plaintiff independent contractor's wage claims fell within the scope of the liquidated fee amount in the parties' agreement. *Spellman*, 680 F.Supp.2d at 191. As in *Spellman*, Scriptfleet's indemnification Counterclaim is valid and

applicable to the claims brought by an individual alleging she has been misclassified as an independent contractor.[5]

At this time, Scriptfleet has a viable cause of action and there is most certainly a set of circumstances under which Scriptfleet could plausibly recover. Because Scriptfleet is not an employer attempting to obtain indemnification from its employee for its own violations of the FLSA, the counterclaim is not unlawful or preempted under *Martin* and its similar line of cases. In fact, the decision in *Spellman* provides a factually identical situation in which the Court declined to dismiss an independent contractor's attempt to dismiss an indemnification counterclaim. When the Court takes as true the allegations set out in Scriptfleet's Counterclaim, it is clear that the Counterclaim is viable. Dobbins' Motion to Dismiss the Counterclaim should therefore be denied.

### D.

### Scriptfleet's Counterclaim is Not a Retaliatory Action

Dobbins argues that Scriptfleet's Counterclaim is "an act of unlawful retaliation." *Motion to Dismiss* at 7. However, Dobbins has neither asserted a claim of retaliation under the FLSA in her Amended Complaint nor properly pled in the Motion to Dismiss the standard by which a counterclaim is deemed retaliatory under the FLSA. Dobbins, instead, improperly attempts to plead a retaliation claim via brief without the presence of a retaliation claim under the

---

[5] The lone case Dobbins cites in support of her argument, *Phelps v. 3PD*, 2008 WL 4911909 (D. Ore. Nov. 12, 2008), is inapposite. In that case, a wholly distinguishable indemnification provision was at issue. Specifically, the indemnification provision in Phelps included "claims by others or by any governmental authorities arising from or relating to [the plaintiff's] relationship with [the plaintiff's] employees or substitutes" and to the plaintiff's "acts or omissions resulting from or arising out of [the plaintiff's] operation of the Equipment." *Id*. at *2. Understandably, the court in *Phelps* determined that the provision did not cover reclassification claims but rather applied only to the plaintiff's relationship with the plaintiff's own employees and the operation of the leased equipment. *Id.* In the present case, the indemnification agreement is essentially identical to the enforced provision in *Spellman*, and it requires indemnification for Dobbins' breach of her obligations under the Agreement, including the liquidated compensation amounts she agreed constituted full compensation.

FLSA within her Amended Complaint. *See Gargano v. Philip Morris, USA, Inc.*, No. 10–24042, 2011 WL 2445869, *3 (S.D. Fla. June 20, 2011) (improper to attempt to amend pleadings via brief). Moreover, even if she could survive *Gargano*, Dobbins' general citation to inapplicable case law in support of deeming Scriptfleet's action retaliatory fails to provide this Court with a proper basis for dismissing Scriptfleet's Counterclaim.

Scriptfleet's Counterclaim comprises the exercise of Scriptfleet's First Amendment right to petition the government for redress of grievances. *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741-43 (1983). Any attempt to prohibit the filing of a suit, including a counterclaim, raises concern over restriction of the exercise of a protected right; a suit should not be prohibited unless it is a mere sham filed for harassment purposes. *Id*. Due to the importance of the right to bring a counterclaim, the filing of a counterclaim may only qualify as a retaliatory adverse employment action if it is "totally baseless." *Munroe v. Partsbase, Inc.*, 2009 WL 413721 at *8 (S.D. Fla. Feb. 18, 2009); *Ergo*, 519 F. Supp. at 781; *see also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1995) (". . . except in rare cases, conduct occurring within the scope of litigation does not provide grounds for a retaliation claim.").

Here, Dobbins has simply cited to a number of cases involving retaliation[6] without recognition of the requirement that she make a showing that Scriptfleet's Counterclaim is baseless in order to properly allege a claim for retaliation under the FLSA. In order to make such a showing, Dobbins must show that the Counterclaim: (1) was filed for a retaliatory motive; and (2) lacks a reasonable basis in fact or law. *Munroe*, 2009 WL 413721 at *8; *Sederquist v. Industrial Engineering & Developments, Inc.*, No. 8:11–cv–1084–T–26AEP, 2011 WL 3331307,

---

[6] Several of the cases cited inexplicably involved analysis of retaliation claims under Title VII or the ADA, rather than retaliation under the FLSA. *See Plaintiff's Brief*, at 7-8 (citing to *Jacques v. DiMarzio*, 216 F.Supp.2d 139, 141-43 (E.D. N.Y. 2002); *Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992, 1008-09 (S.D. Ohio 2002); *EEOC v. Outback Steakhouse of Florida*, 75 F. Supp. 2d 756, 760 (N.D. Ohio 1999).

*2 (M.D. Fla. Aug. 3, 2011).  Dobbins has plainly failed to allege the necessary facts to establish that the Counterclaim is "totally baseless."

Even if she could establish a retaliatory motive, Dobbins would still have to make the difficult showing that Scriptfleet's Counterclaim lacks a reasonable basis in fact or law.  Dobbins could only make this showing if she established that there exists no genuine issue of material fact within Scriptfleet's counterclaim.  *Munroe*, at *8.  As discussed above, and as expressly held in *Spellman*, Dobbins cannot and has not made such a showing.

Dobbins has failed to properly allege retaliation under the FLSA pursuant to 29 U.S.C. 215(a)(3).  Not only has retaliation not been pled by Dobbins, but she has not recognized the burden upon her to show that Scriptfleet's Counterclaim is "totally baseless" in order to warrant dismissal.  Dobbins' Motion to Dismiss the Counterclaim should therefore be denied, as should any attempt by Dobbins to add a claim for retaliation under the FLSA via her Motion to Dismiss the Counterclaim.

### III.

### CONCLUSION

The *Spellman* case analyzed an essentially identical indemnification provision and considered the very same arguments Dobbins presents in this case.  The court in *Spellman* nevertheless rejected the plaintiff's attempt to dismiss the counterclaim.  The same result should apply here.  Scriptfleet therefore respectfully requests that this Court deny Dobbins' Motion to Dismiss the Counterclaim.

Respectfully submitted,

/s/ A. Jack Finklea
Robert L. Browning
A. Jack Finklea

Attorneys for Defendant,
Scriptfleet, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Gregg I. Shavitz
gshavitz@shavitzlaw.com

/s/ A. Jack Finklea
A. Jack Finklea

Robert L. Browning
rbrowning@scopelitis.com
A. Jack Finklea
jfinklea@scopelitis.com
Scopelitis Garvin Light Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204
Telephone: (317) 637-1777
Facsimile: (317) 687-2414

R.H. Farnell II
rhf@bedellfirm.com
Bedell, Dittmar, DeVault, Pillans & Coxe, PA
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

H:\Users\bleive\Documents\Fleetgistics\Scriptfleet Dobbins 14077.15\pleadings\Dismiss counterclaim response.doc